**Murray H. INGALLS, Plaintiff,**

v.

**Eugene M. ZUCKERT, Secretary of the Air Force, Defendant.**

**Civ. A. No. 1547–61.**

United States District Court District of Columbia.

Nov. 5, 1964.

Addendum Nov. 6, 1964.

Donald H. Dalton, Washington, D. C.,. for plaintiff.

David C. Acheson, U. S. Atty. for the District of Columbia, Robert B. Norris, Asst. U. S. Atty. for the District of Columbia, Washington, D. C., for defendant.

KEECH, District Judge.

This matter is before the court on remand from the United States Court. of Appeals for the District of Columbia Circuit reversing a finding for the Government on motion for summary judgment. Following the remand a pretrial was held and an order entered setting forth the respective contentions of the parties. Trial has been had thereon. Plaintiff, a former Major in the United States Air Force, seeks a declaratory and mandatory injunction for reinstatement and for back pay, or for an honorable discharge.

Briefly, the pertinent facts are these: The plaintiff, at the time of his resignation on March 12, 1959, was a Major in the regular United States Air Force. He was then, and had been for some time, stationed at Holloman Air Force Base, New Mexico. He had been in the service more than fourteen years, and possessed an outstanding war record, including

forty combat missions and numerous medals. In December, 1958, plaintiff was advised by an officer in the Office of Security Investigation that he was being investigated in connection with certain alleged homosexual activities. Thereafter there were certain other contacts by plaintiff regarding such investigation. At one such contact plaintiff was advised, in answer to his query as to how the matter was progressing, that it looked bad. Subsequently, on March 9, 1959, plaintiff received formal notification of the charges. Certain conferences ensued between plaintiff and other officers on the base. On March 12, 1959, plaintiff tendered his resignation, which was accepted on April 7, 1959, by the Secretary of the Air Force. Plaintiff was notified on April 9, 1959, that he was relieved of all assignments. The resignation became effective on April 24, 1959, the date it was accepted by the President.

Among the questions this court has for determination is the following:

*Was the plaintiff afforded the opportunity of consulting legal counsel regarding the advisability of submitting his resignation?*

Counsel for the plaintiff denies plaintiff was given such an opportunity. He contends that a resolution of the question put requires consideration of plaintiff's mental competency during the period between notification to plaintiff of the charges and execution by plaintiff of his resignation. Counsel further contends that plaintiff was so emotionally upset as to prevent a reasonable opportunity to consult legal counsel. Counsel also contends that Air Force Regulation 35–66 (1959) should be construed as applicable to plaintiff's case and that it was violated.

Government counsel contends that the plaintiff was given opportunity and, further, that in resolving this issue the court is not permitted to take into consideration the mental competency of the plaintiff. Government counsel contends further that, if the court concludes that the question of the competency of plaintiff to exercise proper judgment as to

counsel is deemed to be material, the record clearly shows that the plaintiff was mentally competent to exercise such judgment as well as to exercise proper judgment as to the advisability of resigning. The Government denies there was a violation of any Air Force Regulation, and claims that AFR 35–66 (1959) was not applicable as it was not retroactive.

■ The court concludes that, in determining whether plaintiff was afforded an opportunity of consulting legal counsel, "opportunity" means a reasonable opportunity, and further, a reasonable opportunity under all of the circumstances, including mental competency of the plaintiff between notification and resignation. This requires consideration of: availability of appropriate Government counsel and civilian counsel at plaintiff's base, home town and elsewhere; plaintiff's freedom to travel, and travel facilities; whether plaintiff was induced not to get counsel by representations of the Deputy Chief of Staff for Personnel to the effect that he (the Deputy Chief) was as good as a lawyer as to the matter of resignation; the effect, if any, of the nature of the charge which plaintiff faced upon his mental competency; his status as husband and father of two children; and whether plaintiff was vested with such knowledge of the charges as to adequately permit an intelligent conference with an attorney looking to his employment as counsel, and thereafter receipt of advice as to whether resignation or one of the other two courses of action was best for plaintiff.

*As to the element of time*: Reference has been made to the period of seventy-two hours after notification, for selection of one of three alternatives prescribed as open to the plaintiff. No authority for the assumption of the time limitation of seventy-two hours could be given to the court at the time of the hearing, either by plaintiff's counsel or by Government counsel (neither statute nor regulation). The record shows that within approximately seventy-two hours after notifica-

tion the plaintiff (with military assistance) had prepared and had in fact executed and filed his resignation with the appropriate authorities. The court will assume the seventy-two hours to be the prescribed period, for it seems implicit in the record and from the opinion of the Court of Appeals that there was such a limitation (notwithstanding absence of citation of authority therefor). This being so, the court concludes that the plaintiff was entitled similarly to construe seventy-two hours as the period within which he was required to select one of the three alternatives offered.

What are the facts? The plaintiff had been put on notice as early as December, 1958, by Major Poy, Security Officer at plaintiff's base that he was the subject of an investigation with reference to certain then unidentified homosexual activities. He was further advised by Major Poy, from time to time, of developments. Formal notification was received on March 9, 1959. Plaintiff conferred promptly with Colonel Gilmore, Deputy Chief of Staff for Personnel, who referred plaintiff to Staff Judge Advocate Gasiewicz. Plaintiff sought to have the latter officer represent him, but was advised that that officer would not be able to do so because, as Staff Judge Advocate, he would be required to review the record in such capacity if the matter went to trial. The Staff Judge Advocate offered to assign two legal officers of his staff to assist plaintiff, but this tender was refused by plaintiff. There was further discussion by the Staff Judge Advocate and the plaintiff. In the course thereof legal officers at other bases were considered, and at least one such officer was contacted. He would not agree to represent the plaintiff, until he could see the file covering charges. The record shows that the file was not transmitted, as authority to do so was not obtained. (At trial, the Staff Judge Advocate said that an attorney could have had it on request, and later stated also that plaintiff could have had it on request.) Discussion was had also as to the advisability of getting one of the civilian lawyers

in the town where the plaintiff was located. Plaintiff did not desire such counsel because of the fact that they were personally known to plaintiff and his family. Plaintiff did not want the subject of the charges to become generally known. All of this was prior to execution of resignation. Plaintiff conferred from time to time with different officers at the base. Colonel Gilmore, Deputy Chief of Staff for Personnel, indicated to plaintiff that as to matters relating to resignation he was in a position to advise plaintiff as well as an attorney. The resignation was prepared mechanically by Colonel Gilmore's office. The plaintiff, however, prepared personally and in long hand Paragraphs 7, 8 and 9 thereof. Actually, plaintiff knew from December, 1958, what was in the offing, and received formal notice March 9, 1959. The seventy-two-hour limitation assumed, therefore, does not stand alone.

*As to opportunity to consult with an attorney* (this having been dealt with already in part): Plaintiff did in fact confer with the Staff Judge Advocate, and was offered the assignment of two officers in the office of the Staff Judge Advocate, whom he did not accept. Utilization of legal officers from other bases was considered, as well as employment of civilian attorneys in the town of Almagordo. Plaintiff was therefore not limited to local officers on his base or to civilian attorneys in his home town, but was cognizant of the possibility of obtaining legal officers on other bases. Plaintiff was free to go when he pleased and where he pleased, with air transportation at his disposal, according to his own testimony.

Was the plaintiff vested with sufficient information competently to consult with and obtain advice from counsel? The record shows that plaintiff was given a summary of the charges, and there is testimony to the effect that at least two of the affidavits (Evans and Cummings) constituting bases for charges were read to him or that plaintiff read such affidavits. When confronted with the document bearing the names just mentioned,

plaintiff having previously denied he was given the names of participants, plaintiff stated that he had supplied those names. It must be remembered that the plaintiff has at no time denied the charges; furthermore, that he has testified that he had certain information as to occasions but not as to activities. The latter he attributed to loss of memory after drinking.

Plaintiff called as a witness Dr. Frank Caprio, a qualified psychiatrist, who saw and examined him on the 17th of August, 1959. It was his opinion that plaintiff was not a homosexual, nor suffering from any nervous or mental disorder. In essence, the Doctor concluded that plaintiff had been shocked and was very disturbed. He expressed the opinion that plaintiff was not capable of exercising wise or good judgment for his welfare, between March 9, 1959, and March 12, 1959.

Several fellow officers who had frequent contacts with plaintiff over a substantial period (both prior to and during the critical period here involved) testified that plaintiff was not in a state of shock but was clearly conscious of what he was doing, even to the extent of drafting important provisions for insertion in his resignation. It was their testimony that his judgment was not warped.

 The court concludes that the plaintiff was concerned about his predicament, as any normal person would be, but the record does not support plaintiff's contention that he was affected to such a degree that he was not able to make use of his mental faculties appropriately, within the time prescribed to consult counsel as to the matter of resignation or as to his selection of that course of action over the other alternatives offered.

The court further concludes that the fact that the complete file of charges against plaintiff was not permitted to go to the Walker Base for use by a possible prospect to serve as attorney for plaintiff is not of such magnitude as to constitute a denial of opportunity to obtain counsel. This is especially true in the light of the entire record.

 The court, on the overall record, is constrained to hold that the specific question put for determination by the mandate of the Court of Appeals must be answered in the affirmative. The court finds that under all of the facts the plaintiff had adequate time, even though it be concluded that there was a seventy-two-hour limitation between notification and his resignation, to consult with legal counsel. Military counsel were available at plaintiff's base; civilian attorneys were located in the town where plaintiff was situated; plaintiff was free to go when and where he pleased and had, according to his own testimony, air transportation at his service. This meant that, even with the adopted time limitation, distance, even if an element, was not controlling. Assuming, as has been done, that there was a seventy-two-hour limitation between formal notification and the lodging of the resignation, it must be borne in mind that plaintiff was put on notice, as early as December, 1958, as to what was in the offing, and was to a degree kept advised of developments. Prior to formal notification a fellow officer told plaintiff, in response to query put by plaintiff, that the situation looked bad.

The court further holds that on the record plaintiff was vested with sufficient judgment properly to determine the advisability of consulting with legal counsel as to whether a resignation was in his best interest. The court still further finds that the plaintiff freely and voluntarily executed his resignation. The court further holds that no regulation was violated.

*As to the contention of plaintiff that AFR 35–66, 17 March 1959, should be applied to his case:* The court concludes that the said regulation is not applicable. The court finds no reason for taking a regulation which by its terms is made effective on a future date and applying it to a case which has been already processed.

94

The court has also for determination the following question:

*Did the Air Force afford the plaintiff such medical examination as was required?*

Plaintiff contends that his physical examination was superficial and inadequate in that no psychiatric examination was made nor electrocardiogram taken. The record before the court shows that plaintiff was given a regular examination, and furthermore it reflects the testimony of Dr. Eason, the medical officer and examining physician, that in his judgment no psychiatric examination was indicated nor was an electrocardiogram. No regulation has been shown to the court which requires either of these particular examinations as a matter of right under the facts here. Reason dictates a conclusion that the examining officer, a qualified medical officer, had the right and duty to exercise his medical judgment. His conclusion as to no need for psychiatric examination is confirmed by the testimony of plaintiff's witness, Dr. Frank Caprio, a psychiatrist, who examined plaintiff on August 17, 1959, and found plaintiff to be then free of any nervous or mental disorder. As to the absence of an electrocardiogram, there is no requirement therefor unless the officer be forty years old or over, or there is a finding suggestive of cardiac abnormality. The plaintiff was thirty-nine years of age, and the examining medical officer has testified that in his judgment an electrocardiogram was not indicated.

The court finds that there was no violation of any regulation as to physical or mental examination of the plaintiff.

This memorandum may be used in lieu of findings of fact and conclusions of law.

From what has been hereinbefore set forth, it follows that the complaint of the plaintiff must be dismissed.

It is therefore, this 5th day of November, 1964, ordered that the complaint be, and the same is hereby, dismissed.

* "Psychological and Psychomoter (Tests used and score)"

## ADDENDUM

After preparation of this memorandum plaintiff's counsel, by letter of November 5, 1964, referred the court to Question No. 72,* in Plaintiff's Exhibit No. 10 (in evidence), which was left blank. The court has again considered this matter, but finds it to be of no probative value in the light of the testimony in the case, and for the further reason that, in the same Exhibit, Question No. 42, "Psychiatric (Specify any personality deviation)", shows the "Clinical Evaluation" to be normal.